**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

**IN RE: R. MICHAEL MOITY, JR.**      **\***     **MISC. NO.  07-0001**

       **\***     **MAGISTRATE JUDGE HAYES**


<u>**REPORT AND RECOMMENDATION**</u>

      R. Michael Moity, Jr. is an attorney admitted to the bar of the United States District Court for the Western District of Louisiana.  Since 1998, he has appeared as counsel in thirteen cases before the court – two of which remain pending.  On October 24, 2006, Judge Melançon referred the Matter of R. Michael Moity, Jr. to the undersigned for further investigation and proceedings, and to report any findings and recommended disciplinary action to the active judges of this Court for a majority vote based on R. Michael Moity, Jr.'s unprofessional conduct toward court staff in *Louviere, et al. v. Lakamp, et al.*  Civil Action Number 06-0557 (W. D. La.), and the fact that Michael Moity's sworn testimony before Judge Melançon at a subsequent contempt hearing in that matter appeared to be inconsistent with the minutes and transcripts of hearings in one or more cases involving Moity before the 16th Judicial District Court for the Parish of St. Mary, State of Louisiana.

      For the reasons assigned below, it is recommended that the court suspend R. Michael Moity, Jr.'s right to practice law before the United States District Court for the Western District of Louisiana for a period of one year, and that prior to seeking reinstatement, he complete certain minimum requirements in an effort to demonstrate rehabilitation and fitness to practice law.

## Procedural Background

On August 9, 2006, Magistrate Judge Methvin set a Rule 16 conference for September 21, 2006, at 9:30 a.m., in chambers.  (*See, Louviere v. Lakamp*, Civil Action Number 06-0557 [doc. # 14] (W.D. La.).[1]  Counsel were electronically noticed with the order. (*See*, doc. # 14, Notice of Electronic Filing).  However, counsel (for both sides) did not appear at the appointed date and time.  (September 21, 2006, Certification of Contempt, [doc. # 17]).  Accordingly, Magistrate Judge Methvin's law clerk, Stacey Blanke, telephoned the attorneys to inquire about their failure to appear.  *Id*.  Ms. Blanke first telephoned plaintiff's counsel, R. Michael Moity, Jr. *Id*.  The following exchange occurred:

> Mr. Moity's secretary answered the phone and informed her that Mr. Moity was on the telephone. When Ms. Blanke identified herself as Magistrate Judge Methvin's law clerk and stated that Mr. Moity was supposed to be present for a Rule 16(f) conference but had failed to appear, she put Ms. Blanke on hold to go get him.

> When Mr. Moity took the call, he started speaking rapidly about some requests for admissions that defense counsel had just sent him. Ms. Blanke stated that she was not calling about discovery, but rather was calling to find out why Mr. Moity had failed to appear at the Rule 16 conference. Mr. Moity responded that he had "waived" the conference, that he'd agreed with defense counsel to "waive" the hearing, or something to that effect. Ms. Blanke told Mr. Moity that the conference cannot be waived, and that the Rule 16(f) conference order requires the personal attendance of counsel in chambers. Ms. Blanke stated that she needed to find out why Mr. Moity had not appeared, because she needed to advise the judge so that the court would know what action to take.

> Mr. Moity referenced a telephone message from the court which he acknowledged that he had not returned. Indeed, Ms. Blanke had placed two telephone calls to Mr. Moity in the days before the conference, one on Tuesday, September 19 and one on Wednesday, September 20. When Mr. Moity mentioned those phone calls, Ms. Blanke confirmed that she had indeed called him, and that both messages

---

[1]  Until otherwise stated, all further references are to documents and proceedings in *Louviere v. Lakamp, supra*.

2

specifically referenced the Rule 16 conference. At that point, Mr.Moity started yelling and asking, in a very angry tone, whether Ms. Blanke had specifically included in her messages to his office that he was supposed to appear at the Rule 16 conference. Ms. Blanke asked Mr. Moity to calm down, and then asked if he was suggesting that it was her responsibility to call him and remind him about the conference. Mr. Moity stated he was not implying that, but then started questioning Ms. Blanke, in what she perceived to be a very ugly tone, why she hadn't done so, since she was "already calling anyway."

Ms. Blanke told Mr. Moity that her messages concerned the court's jurisdictional amount review, which she had been trying to resolve prior to the Rule 16 conference. Ms. Blanke stated that the only reason she mentioned the conference in her messages was that she wanted Mr. Moity to know that she needed him to call her back before the conference on Thursday. Ms. Blanke further told Mr. Moity that the judge's law clerks do not personally call counsel in the days before scheduled conferences or hearings to remind counsel that they have an obligation to appear.

Ms. Blanke again asked Mr. Moity why he hadn't returned her calls, stating that she would need to explain everything to the judge when she explained why he'd failed to appear at the Rule 16 conference. Mr. Moity responded by asking, "Do you know how many calls I get???  I'm swamped! You think *you're* busy?"

Ms. Blanke told Mr. Moity that there was no reason to get upset, that this was a professional phone call to assess why he had not returned the court's phone calls and why he'd failed to appear at a court-ordered conference for the purpose of the court's assessment of sanctions. At some point, Mr. Moity cut Ms. Blanke off in mid-sentence, yelling "Stop saying 'Mr. Moity.' You've said my name about 5 times, I know my name!"

Ms. Blanke repeated that there was simply no reason to get upset, that this was part of her job, and that it was her responsibility to determine why counsel fail to appear at hearings so that the judge can determine the appropriate sanction. Mr. Moity responded by saying, "I'm not upset! You're putting something negative on me! You're threatening me that you're going to say something negative about me to the judge." Ms. Blanke responded that she was in no way threatening him, but rather was giving him an opportunity to explain his reasons for failing to appear. Mr. Moity responded, "You know what, I don't want you saying *anything* to the judge. You tell her to call me personally, and I will explain what happened. I want to talk to her myself. You get her to call me." Ms. Blanke explained that the judge does not ordinarily discuss such matters with counsel personally, but that she would explain to the judge that Mr. Moity wanted to talk to her himself.

3

> Because Ms. Blanke had never gotten a satisfactory answer for why Mr. Moity
> failed to appear, she concluded the conversation by asking "So your reason for not
> appearing is that, although you got the order, for whatever reason, it was not
> calendared, correct?" Mr. Moity responded, "It was not calendared." Ms. Blanke
> then asked, "And the reason that you did not return my calls is that you were too
> busy?" Ms. Blanke cannot remember Mr. Moity's response to that question. Mr.
> Moity again said, "You tell the judge to call me." Ms. Blanke responded that she
> would pass that on to the judge, thanked Mr. Moity, and hung up.

(Certification of Contempt, [doc. # 17], in pertinent part).

Due to the unprofessional conduct exhibited by Mr. Moity during his telephone conversation

with Ms. Blanke, Magistrate Judge Methvin certified the matter to the district judge for a civil

contempt hearing, and to determine what sanctions, if any, should be imposed upon Mr. Moity.

(September 21, 2006, Certification of Contempt, [doc. # 17]).  That same day, Judge Melançon

issued an order compelling R. Michael Moity Jr.'s attendance at a hearing to be held on

September 22, 2006, "to show cause why he should not be held in contempt of court, or why

other sanctions should not be imposed, including suspension or disbarment from practice in this

court, for the actions outlined in the certification of contempt filed this date."  (September 21,

2006, Order to Show Cause [doc. # 18]).[2]

During the September 21, 2006, hearing, Judge Melançon recited the sequence of events

set forth in the certification of contempt and asked Mr. Moity to admit or deny them.  (September

21, 2006, Hearing Transcript, pgs. 11-17).[3]  Mr. Moity admitted all but two paragraphs of the

---

[2]  The court authorized the U.S. Marshal to arrest Mr. Moity if he failed to appear for the hearing.  *Id.*

[3]  The transcripts of the September 21 & 26, 2006, hearings held in *Louviere v. Lakamp*, *supra*, are docketed in this miscellaneous case.  *See*, January 26, 2007, Order [doc. # 45] in Civil Action Number 06-0557.

conversation that formed the basis for the certification of contempt.  *Id*.[4]  Accordingly, Judge

Melançon set a hearing for September 27, 2006, to hear testimony regarding the disputed

portions of the certification of contempt.  *Id*. at pg. 19.  Due to the seriousness of the matter, the

court advised Mr. Moity to bring a lawyer with him to the hearing.  *Id*. at pg. 20.  Prior to

adjourning the hearing, Judge Melançon noted that his law clerk had uncovered that one year

earlier, the Louisiana Supreme Court had publicly reprimanded Mr. Moity.  *Id*. at pgs. 26-27.

Judge Melançon inquired about the basis for the disciplinary action, and Mr. Moity responded

that he had self-reported an instance where he signed and notarized (with consent) his mother's

signature on an affidavit filed in a property partition suit between his parents.  *Id*. at pgs. 27-29.

Mr. Moity appeared at the September 27, 2006, hearing with retained counsel, J. Kevin

Stockstill.  (September 27, 2006, Hearing Transcript).  At the outset, Mr. Moity personally, and

through counsel, withdrew his prior denials, and stipulated to the entire version of events set

forth in Magistrate Judge Methvin's Certification of Contempt.  *Id*. at pgs. 6-7.[5]  Thereafter, the

court placed Mr. Moity under oath and questioned him about any prior disciplinary proceedings.

*Id*. at pgs. 10-end.  At one point, the court interrupted Mr. Moity and reminded him that he was

under oath, and that if he did not remember something, then he could take a break to obtain a

copy of the district judge's order.  *Id*. at pg. 14.  Nonetheless, Mr. Moity continued to recite his

recollection of his prior disciplinary proceeding.  *Id*.

---

[4]  He denied as written, the paragraphs beginning with "Mr. Moity referenced a telephone message from the court . . ." and "Ms. Blanke told Mr. Moity that there was no reason to get upset . . ."  *Id*.

[5]  *See*, September 26, 2006, Letter from Kevin Stockstill to Judge Melançon; Minutes from September 27, 2006, hearing [doc. # 20], Exh. 1.

At the conclusion of the hearing, the court held Mr. Moity in contempt for the reasons set forth in Magistrate Judge Methvin's Certification of Contempt.  *Id*. at pgs. 21-22.  The court imposed sanctions requiring Moity to attend anger management classes, perform 40 hours of community service, pay a $ 100 fine to the Clerk of Court, and apologize to Ms. Blanke and Magistrate Judge Methvin.  *Id*. at pgs. 24-25.  The court asked Mr. Stockstill to prepare and submit a proposed judgment of contempt by noon on the following day.  *Id*. at pg. 26.  Two days later, Mr. Moity filed a proposed order addressing the contempt proceedings and their outcome. (*See*, September 29, 2006, proposed order [doc. # 24]).  He also filed a notice of appeal to the Fifth Circuit from the "Judgment of Contempt issued by the District Court and sentencing contained therein ordered by the Court on September 27, 2006."  (September 29, 2006, Notice of Appeal [doc. # 21]).

On October 16, 2006, Moity filed a motion to recuse Magistrate Judge Methvin and Judge  Melançon due to alleged bias that might "impede their impartiality."  (Motion to Recuse [doc. # 31]).  Judge Melançon denied the motion.  (October 24, 2006, Order [doc. # 34]).  In a separate order, Judge Melançon noted that after the September 27, 2006, hearing, the court received information from the 16th Judicial District Court germane to Mr. Moity's representations and sworn testimony at the September 27, 2006, hearing.  (October 24, 2006, Order [doc. # 35]).  The court thereupon vacated its oral ruling rendered at the conclusion of the second hearing and referred the matter to the undersigned to make such investigations and hearings as required to determine whether Mr. Moity should be disbarred as a member of this court or subjected to other appropriate disciplinary action pursuant to Local Civil Rule

83.2.10W.  *Id*.[6]  Immediately thereafter, Magistrate Judge Methvin and Judge Melançon recused

themselves from further proceedings in Civil Action Number 06-0557.  (October 24, 2006, Order

[doc. # 36]).[7]  The case was subsequently reassigned to Judge Haik and Magistrate Judge Hill.

(November 1, 2006, Order [doc. # 38]).  On March 15, 2007, Judge Haik assigned the contempt

portion of the proceedings to Judge Walter.  (March 15, 2007, Order [doc. # 49]).  He further

stated that Judge Walter and the undersigned were to handle all matters pertaining to the issue of

contempt and attorney conduct involving R. Michael Moity, Jr.  *Id*.  Judge Haik stayed the case

pending the outcome in this matter.  (September 11, 2007, Order [doc. # 51]).

On January 29, 2007, the undersigned issued an order directing Mr. Moity to show cause

on February 23, 2007, why he should not be suspended, disbarred, or subjected to other

appropriate disciplinary action.  (January 29, 2007, Order in Miscellaneous Case Number 07-

0001 [doc. 6]).  Mr. Moity filed a motion to stay the matter pending his appeal to the Fifth

Circuit, which the undersigned granted. *See*, [doc. # 7], and February 15, 2007, Electronic Order.

Six months later, the Fifth Circuit dismissed the appeal. *See, Louviere, et al. v. Lakamp, et al.*,

Docket Number 06-31072 (5th Cir. 8/20/07) (unpubl.).  Accordingly, the undersigned lifted the

stay and set a hearing for October 15, 2007, to afford Mr. Moity an opportunity to show cause

why he should not be suspended or disbarred from practicing before the United States District

Court for the Western District of Louisiana or why other appropriate disciplinary action should

not be imposed.  (*See*, September 13, 2007, Show Cause Order (citing LR 83.2.10W)).  The

---

[6]  On November 30, 2006, Moity appealed this order.  (November 30, 2006, "Notices of
Appeal" [doc. # 40]).

[7]  The judges recused themselves because they had initiated disciplinary proceedings
against Mr. Moity, not because of any perceived bias by Mr. Moity.  *Id*.

order directed Mr. Moity to file a memorandum addressing the charges against him and to submit a list of witnesses and exhibits he intended to offer at the hearing.  *Id*.

On October 1, 2007, Mr. Moity filed a memorandum in response to the rule to show cause wherein he argued that his "testimony provided on September 27, 2007 was taken under false pretenses and should be stricken from the record."  (Resp. Memo. [doc. # 10], pgs. 6-7).  He further stated that the record was complete and that another hearing was unnecessary.  *Id*.

The undersigned addressed respondent's memorandum in an Order dated October 4, 2007.  The undersigned found no basis for Mr. Moity's argument that his testimony on September 27, 2006, should be stricken, and thus the request was denied.  (October 4, 2007, Order [doc. # 11]).[8]  In the same order, the undersigned identified, enumerated, and attached copies of pertinent documents from the state court record that had been forwarded by Judge Melançon's office.  *Id*.  They included,

A)      Petition in Docket No. 108266 "C";

B)      September 23, 2003, Order signed by J. Conery in Docket No. 108266 "C";

C)      Extract of Minutes from March 19, 2003, Hearing in Docket No. 108266 "C";

D)      Extract of Minutes from October 14, 2003, Hearing in Docket No. 108266 "C";

E)      Extract of Minutes from January 9, 2004, Hearing in Docket No. 108266 "C";

F)      Transcript of March 19, 2003, Motion for Contempt Hearing in Docket No. 108266 "C";

G)      Transcript of October 14, 2003, Rule to Show Cause/Contempt Hearing in Docket No. 108266 "C"; and

---

[8]  To the extent that Mr. Moity maintains that his testimony from September 26, 2006, should be stricken, the undersigned incorporates and adopts herein the reasons for the denial as set forth in the October 4, 2007, Order.

8

H)      Extract of Minutes from June 10, 2003, Hearing in Case Number 00095394. *Id.*[9]

The order specified several instances where Mr. Moity's testimony before Judge Melançon on September 27, 2006, appeared to be inconsistent with the minutes and transcripts of two cases involving respondent in the 16th Judicial District Court.  *Id*.  The undersigned observed that Mr. Moity's conduct potentially violated Rules 3.3(a)(1) and 8.4(c) of the Rules of Professional Conduct of the Louisiana State Bar Association as adopted by the United States District Court for the Western District of Louisiana, LR 83.2.4W.  *Id.*  In addition to the conduct set forth in Magistrate Judge Methvin's September 21, 2006, Certification of Contempt, the order advised that the recommendation would also contemplate any unsubstantiated allegations or aspersions made by respondent about the members of the court (or court staff) in his appellate court brief. *Id*. (citing Rule 8.2(a) of Rules of Professional Conduct of the Louisiana State Bar Association).[10]

On October 11, 2007, Moity filed his second memorandum in response to the rule to show cause and raised additional arguments, but waived his right to appear at the show cause hearing.  (2d Memo. in Resp. to Rule to Show Cause [doc. # 13]).[11]  Accordingly, the hearing

------

[9]  The undersigned has since received certified copies of the above documents from the Clerk of Court and court reporter for the 16th Judicial District Court.  They will be filed as exhibits in this matter.

[10]  Respondent filed herein a copy of his memorandum that he filed with the U.S. Court of Appeals for the Fifth Circuit in Case No. 06-31072.  *See*, doc. # 12.

[11]  Respondent argued that he did not receive proper notice of the charges against him. The undersigned finds no basis for this argument.  *See, In Re Nalls*, 124 Fed. Appx. 232 (5th Cir. 2005) (unpubl.).

was upset.  (October 12, 2007, Minute Entry).  Approximately two months later, the undersigned received the last of the requested certified copies of minutes and transcripts of relevant proceedings held in the 16th Judicial District Court.[12]  The matter is now ripe.

### Analysis

Notwithstanding respondent's protestations and arguments to the contrary, it is manifest that the court referred the instant matter to the undersigned to conduct an investigation and issue a recommendation pursuant to Local Rule 83.2.10W.  (October 24, 2006, Order [doc. # 35]).[13]

Rule 83.2.10W provides that

> [a]ny judge of this Court may initiate disciplinary proceedings, including fine, suspension or disbarment, pursuant to this section.  The judge may take action directly under subsection B 2. of this rule or, when appropriate, by submitting the matter to a Special Master, a United States Magistrate Judge or the Chief Judge of this court for a hearing prior to action under subsection B 2.

LR 83.2.10W(A)(1).

Disciplinary proceedings as initiated above shall be submitted to, and acted upon by majority vote of the active judges of the Western District of Louisiana.  LR 83.2.10W(B)(2).

The federal courts possess inherent authority to suspend or disbar an attorney.  *Resolution Trust Corp. v. Bright*, 6 F.3d 336, 340 (5th Cir. 1993) (citations omitted).  Courts also possess an inherent power to prevent unprofessional conduct by attorneys who appear before them.  *Jackson v. U.S.*, 881 F.2d 707, 710 (9th Cir 1989).  Before sanctioning an attorney pursuant to its inherent authority however, the court must specifically find that the attorney acted in "bad faith."  *Id*.

Disbarment is a quasi-criminal proceeding, and any disciplinary rules invoked against an attorney

---

[12]  The court did not receive the certified transcripts until December 2007.

[13]  The contempt portion of the proceedings were referred to Judge Walter.  (March 15, 2007, Order [doc. # 49]).

10

must be strictly construed, with any ambiguities resolved in favor of the charged attorney.

*Bright, supra*.  "A federal court may only disbar an attorney upon clear and convincing evidence of a violation warranting this extreme sanction."  *Dailey v. Vought Aircraft Co.*,  141 F.3d 224, 229 (5th Cir. 1998) (citation omitted).  An attorney's license to practice law is a "right" which the courts should not withdraw "'except in clear cases of misconduct, which affect the standing and character of the party as an attorney.'"  *Matter of Thalheim*, 853 F.2d 383, 387-389 (5th Cir. 1988) (quoting *Ex parte Wall*, 107 U.S. 265, 288, 2 S.Ct. 569, 589 (1883)).

a) <u>September 21, 2006, Telephonic Conversation</u>

At the September 27, 2006, hearing, Moity stipulated to the summary of the September 21, 2006, telephonic conversation between Stacey Blanke and himself as memorialized in Magistrate Judge Methvin's Certification of Contempt.  (September 27, 2006, Hearing Transcript, pgs. 6-7).  Admission to the bar impliedly obligates an attorney to maintain due respect to courts of justice and judicial officers. *Bradley v. Fisher*, 80 U.S. 335 (1871).  Mr. Moity's apparent tone, voice levels, and comments during the conversation were clearly inappropriate and unprofessional considering Ms. Blanke's status as a fellow attorney and declared representative of a federal magistrate judge.  At a minimum, Mr. Moity's *command* that Magistrate Judge Methvin call him, exhibited a lack of respect and deference for the court.

The undersigned finds by clear and convincing evidence that Mr. Moity's telephonic exchange with Ms. Blanke on September 21, 2006, violated his implied obligation to maintain due respect to courts of justice and judicial officers. *Bradley, supra*.  The undersigned is not blind to the stress and tribulations of a solo law practice, but that does not permit an attorney to relieve his frustration via unwarranted incivility, rudeness, and exclamation upon a representative

of the court who called to ascertain why counsel did not comply with a court order.  The

persistent belligerence of respondent's comments during the conversation demonstrate bad

faith.[14]

b) September 27, 2006, Hearing

      The undersigned also finds that Mr. Moity made several material misrepresentations to

the court at the September 27, 2006, hearing.  The uncontradicted evidence before the

undersigned establishes that Moity attended two contempt hearings in *Moity v. Moity*, before

Judge Conery of the 16th Judicial District Court for the Parish of St. Mary, State of Louisiana.

*Moity v. Moity*, Case No. 108,266 Div. C (16th JDC, 3/19/03 and 10/14/03); Exhs. F & G.[15]  The

first hearing was held on March 19, 2003, and the second on October 14, 2003.  *Id*.  At the first

hearing, Michael Moity admitted that he signed his mother's name to an affidavit, notarized it,

and submitted it with his opposition to a motion for summary judgment.  (March 19, 2003,

Motion for Contempt Hearing, pg. 7; Exh. F).

_____

    [14]  The undersigned further observes that Mr. Moity's conduct unequivocally violated the
Louisiana State Bar Association's Code of Professionalism – specifically the section which
obligates an attorney to conduct himself with "dignity, civility, courtesy, and a sense of fair
play." (Code of Professionalism).  However, because it is at least debatable whether the Code of
Professionalism applies to members of the bar of the Western District of Louisiana, the court
does not rely on the Code as a basis for its findings. Although the Western District adopted the
Rules of Professional Conduct of the Louisiana Bar Association, as amended, LR 83.2.4W, there
is no indication that the Rules later incorporated the Code or that this court formally adopted the
Code as did the Eastern District of Louisiana in August 1999.  *See, Trico Marine Assets, Inc. v.
Diamond B Marine Services, Inc.*, 332 F.3d 779, 794 (5th Cir. 2003).

    [15]  In *Moity v. Moity*, R. Michael Moity, Jr. filed suit against his father, Randolph Moity,
Sr., his brother, Ian Moity, and Cypremort Holding, Inc.  *Moity v. Moity*, Case No. 108,266,
Petition (Exh. A).  Michael Moity asserted claims as a shareholder of a predecessor corporation
to Cypremort Holding, Inc. which was formed during the marriage of Michael Moity's parents.
*Id*.

In his oral findings, Judge Conery stated that Mr. Michael Moity appeared to "have so much anger and animosity toward this [sic] father that he is unable to objectively see this situation."  *Id*. at pg. 18.  Due to Mr. Moity's youth and limited experience, Judge Conery deferred a formal ruling on the motion for contempt on condition that Mr. Moity pay $ 500.00 attorney's fees, plus all court costs for the hearing and the motion for contempt; that he undergo psychological evaluation and follow all treatment recommendations (including counseling); that he attend at least 12 hours of ethics and professionalism during the next year; and that he report back to the court in three months to provide an update on his counseling and ethics and professionalism hours.  *Id*. at pgs. 21-22.[16]

When Mr. Moity failed to report back to the court within three months, Judge Conery issued an order setting an October 14, 2003, hearing for Michael Moity to show cause why the previously deferred contempt sanctions should not be imposed.  (September 23, 2003, Order in Case No. 108,266 (16th JDC); Exh. B).[17]  Upon opening the October 14, 2003, hearing, Judge Conery noted that Michael Moity had not reported back to the court within three months of the last hearing, and had not undergone a psychological evaluation.  (October 14, 2003, Rule to Show Cause/Contempt, pgs. 3-4; Exh. G).  In other remarks, Judge Conery observed that Michael Moity had filed another lawsuit in Iberia Parish to set aside a community property settlement between his parents.  *Id*.  Judge Conery stated that it had been represented to the court

---

[16]  *See also*, March 19, 2003, Extract of Minutes, Case No. 108266 (16th JDC); Exh. C.

[17]  Judge Conery further ordered that a copy of the psychological evaluation be furnished to the court "forthwith."  *Id*.

that Michael Moity had signed his mother's name to a verification of petition in that case.  *Id*.[18]

He opined that Mr. Moity's actions demonstrated a troubling pattern of behavior.  *Id*.

Judge Conery recognized that the reason why Michael Moity was unable to furnish a psychological evaluation to the court was because he had not obtained a psychological evaluation until after the September 23, 2003, Order was signed.  *Id*. at pg. 6.  With the consent of all parties, the court spoke by telephone with Moity's psychologist, Dr. LaGarde, concerning his evaluation and testing on October 6 and 8, 2003.  *Id*. at pgs. 6-7.

In his defense, Moity stated that he had filed a motion to continue the previously scheduled hearing in the matter.  *Id*. at pg. 7.  He further stated that the order which reset the hearing (September 23, 2003, Order) did not direct him to provide a psychological evaluation *prior* to the hearing.  *Id*.[19]  Mr. Moity stated that he had complied with *everything* that the court had asked him to do – except that he had taken only four hours of ethics.  *Id*. at pg. 8 (emphasis added).  Mr. Moity emphasized that if the court found him in contempt it would be "semantics." *Id*.

Judge Conery was not persuaded by Mr. Moity's argument, and held him in contempt of court.  *Id*. at pgs. 10-11.  He sentenced Mr. Moity to 90 days in the parish jail, suspended, and placed Moity on 90 days supervised probation with the requirement that he continue treatment with Dr. LaGarde, and that he not file any more lawsuits against his father in proper person

_____

[18]  Minutes from *Randolph M. Moity, Sr. v. Renee St. Clair Quereaux*, indicate that Judge Comeaux advised Michael Moity of his right to counsel "on the charge of forgery as to the signature on a document in question, a verification signature."  *Moity v. Quereaux*, Case No. 00095394 Minutes (16th JDC June 10, 2003); Exh. H.

[19]  Of course, the order stated that a copy of the evaluation should be "furnished to the Court forthwith."  (September 23, 2003, Order; Exh. B).

14

without having the lawsuits pre-screened by another attorney to attest to their validity.  *Id*. at pg.

11.  The court set a compliance review hearing for January 2004.  *Id*.[20]

Returning now to Mr. Moity's sworn testimony before Judge Melançon on September 27,

2006, the undersigned observes that the court asked Mr. Moity if he had "had more than one

run-in aside from this proceeding here with a state district judge in the 16th JDC?"  (September

27, 2006, Hearing Transcript, pg. 11).  Moity replied in the negative.  *Id*.  The court then asked

Mr. Moity if he had "had any other issues with any court other than in the 16th JDC?  In other

words, have you ever had any problems with *any other judges* where you *might have been held in*

*contempt* or brought up on contempt or had any kind of sanctions placed on you by any other

state district judge outside the 16th JDC?"  *Id*. (emphasis added).  Mr. Moity sought to clarify the

question, and the court replied "[a]ny kind of sanction.  You didn't do what you were supposed to

when you wanted to, your behavior was obnoxious or whatever."  *Id*.  Moity replied, "[o]h, no,

never, huh-huh, no, sir."  *Id*.

Judge Melançon asked Mr. Moity what the state court judge did after Mr. Moity self-

reported.  *Id*. at pg. 12.  Rather than accurately setting forth the two hearings – the second

hearing having been required by his failure to comply with the requirements of the first hearing,

Mr. Moity conflated the two hearings into one.  *Id*. at pgs. 12-13.  Moity further misrepresented

that he had been placed on unsupervised probation, when the state court record indicates that he

was placed on supervised probation.  *Id*.[21]  Moreover, Moity stated that Dr. LaGarde had sent a

---

[20]  On January 27, 2004, Judge Conery ordered Mr. Moity's probation satisfactorily
terminated.  *Moity v. Moity*, Case Number 108266, Extract of Minutes (16th JDC 1/9/04); Exh. E.

[21]  *See*, *Moity v. Moity*, Case Number 108266, Extract of Minutes (16th JDC 10/14/03);
Exh. D.

copy of his report to Judge Conery, when Dr. LaGarde clearly had not done so by the time of the second state court hearing.  *Id*.

Judge Melançon then cautioned Mr. Moity that he was under oath, and that he should not make any intentional or unintentional misrepresentations.  *Id*. at pg. 14-16.  Whereupon, Mr. Moity recounted the 90 day suspended jail term.  *Id*.  He further elaborated upon the disciplinary sanctions imposed by Judge Conery.  *Id*.  However, he did not intimate that the events before Judge Conery transpired over a sequence of two hearings.  *Id*.[22]

The undersigned finds by clear and convincing evidence that respondent recklessly misrepresented material facts to a tribunal and recklessly failed to correct the misrepresentation after the hearing adjourned.  Specifically, in his sworn testimony before Judge Melançon, Mr. Moity conflated his prior disciplinary hearings before Judge Conery into one; he incorrectly testified that Judge Conery had placed him on "unsupervised" probation; and he failed to disclose that Judge Comeaux had threatened him with forgery charges in another case.[23]  Even if the court afforded respondent's testimony some latitude due to the passage of years between the state court disciplinary proceedings and the September 27, 2006, hearing, the court cannot reconcile Mr. Moity's failure to review the state court records after the proceeding and report any misstatements to Judge Melançon – especially in light of Judge Melançon's admonition that Mr.

---

[22]  Moity prefaced his remaining testimony with comments such as "if I remember correctly" and "Judge, again, I'm not trying to intentionally misrepresent this, but it was quite sometime ago."  *Id*. at pg. 15.

[23]  Respondent represented to the undersigned that he was not sanctioned by Judge Comeaux for forgery.  (Resp.  Memo., October 11, 2007).  Be that as it may, Judge Melançon asked Mr. Moity about problems with any other judges which might have led to sanctions. (September 27, 2006, Hearing Transcript, pg. 11).  While Mr. Moity can argue that he answered truthfully on technical grounds, he cannot maintain that he responded in good faith.

Moity ensure that he was testifying correctly.  Accordingly, the undersigned finds that respondent violated Rules 3.3(a)(1) & 8.4(c) of the Louisiana Rules of Professional Conduct, and that he acted in bad faith.  *See, Cambridge Toxicology Group, Inc. v. Val Exnicios*, 495 F.3d.169, 2007 WL 2192894 (5th Cir. 8/1/2007) (recklessness equated with bad faith for purposes of sanctions under 28 U.S.C. § 1927).[24]

c) <u>Disparaging Comments</u>

The undersigned finds that Mr. Moity baselessly impugned the integrity of two federal judges and a fellow member of the bar.  In his supporting brief submitted to the Fifth Circuit, Mr. Moity argued that Judge Melançon and Magistrate Judge Methvin violated Canon 2 of the Code of Judicial Conduct when their offices purportedly contacted Judge Conery's office concerning Mr. Moity's prior disciplinary proceedings.  (Plaintiffs-Appellants Brief, pgs. 17-18, filed in *Louiviere v. Lakamp*, Case No. 06-31072 (5th Cir. 2006).[25]  By its terms, however, Canon 2 does not prevent a judge from contacting another judge to obtain copies of prior proceedings.[26]

---

[24]  Rule 3.3(a)(1) states that "[a] lawyer shall not knowingly:
(1)     make a false statement of fact or law to a tribunal or fail to correct a false
        statement of material fact or law previously made to the tribunal by the lawyer."
Rule 8.4(c) provides that
"[i]t is professional misconduct for a lawyer to:
(c)     Engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[25]  Respondent filed a copy of the memorandum in the instant record.  *See*, doc. # 12.

[26]  Canon 2 of the Code of Conduct for United States Judges provides in pertinent part that

A.     A judge should respect and comply with the law and should act at all times in a
       manner that promotes public confidence in the integrity and impartiality of the
       judiciary.

B.     A judge should not allow family, social, or other relationships to influence judicial

Moreover, the comments to Canon 2 clearly permit a judge to provide information in response to a formal request.  (Code of Conduct for United States Judges, Canon 2, comments).[27]

Mr. Moity further accused Judge Melançon of referring to him as a "crack dealer."  What Judge Melançon actually said was "[b]ut, you know, it's almost like I've got a 37-year-old crack dealer that I'm talking to right now trying to say you better -- you know, you're starting right here now, but if you continue in a certain way, and the attitude, if it turns out it's true, and you've admitted to some things here already . . ."  (Transcript of September 22, 2006, Hearing, pg. 30). Obviously, Judge Melançon did not call Mr. Moity a crack dealer; he merely stated that Mr. Moity's behavior was indicative of someone starting down the wrong path.  For Mr. Moity to suggest that Judge Melançon referred to him as a "crack dealer" is a fanciful and blatant mischaracterization of the record unworthy of a practitioner before the bar.

Finally, Mr. Moity accused a fellow attorney and court representative of clandestinely recording their conversation.  (Plaintiffs-Appellants Brief, pg. 20, filed in *Louiviere v. Lakamp*, Case No. 06-31072 (5th Cir. 2006).  However, Ms. Blanke denied recording the conversation and stated that she wrote down what transpired as it occurred.  *Id*. at pg. 8.  Mr. Moity did not introduce any evidence to the contrary.  The mere fact that Mr. Moity may be unable to take

---

conduct or judgment. A judge should not lend the prestige of the judicial office to advance the private interests of others; nor convey or permit others to convey the impression that they are in a special position to influence the judge. A judge should not testify voluntarily as a character witness.

[27] Here, there is no evidence that anything other than copies of official court records were exchanged.  In his latest brief, respondent asked the undersigned to place in the record the actual documents received from the state court.  However, the undersigned has reviewed said documents, and they do not support respondent's theory of some kind of improper motive or conspiracy between the two courts.  Moreover, the undersigned relied solely on the certified records filed in this matter.  Respondent's request is denied.

accurate notes (including quotes) during a conversation does not establish that others are similarly incapacitated.  Mr. Moity's attack upon Ms. Blanke's character can only be motivated by revenge, malice, or ill will.

The undersigned finds by clear and convincing evidence that Mr. Moity's statements regarding Judge Melançon, Magistrate Judge Methvin, and Stacey Blanke violated Rule 8.2 of the Louisiana Rules of Professional Conduct as adopted by the Western District of Louisiana and were made in bad faith.  LR 83.2.4W.[28]

d)  Sanctions

When a federal court's disciplinary rules do not provide guidance regarding the appropriate sanction to be imposed for an attorney's transgressions, the court appropriately looks to the ABA's Standards for Imposing Lawyer Sanctions (the "ABA Standards").  *See, In Re Sealed Appellant*, 194 F.3d 666, 673 (5th Cir. 1999).  "In imposing a sanction after a finding of misconduct, a court should consider the duty violated, the attorney's mental state, the actual or potential injury caused by the attorney's misconduct, and the existence of aggravating or mitigating factors."  *Id*. (citing *inter alia*, ABA Standards, 3.0).

Applying the above considerations here, the undersigned finds that the appropriate sanction is a one year suspension.  Mr. Moity acted unprofessionally; he recklessly misrepresented matters under oath and failed to correct them thereafter; he made unfounded allegations against the judges and an officer of the court.  Mr. Moity's misconduct was

---

[28]  Rule 8.2(a) states in pertinent part that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, . . ."

intentional or reckless, and in bad faith.  Although Mr. Moity's actions did not directly injure his

client, his actions damaged the reputation of the profession and if left unchecked, would

undermine the public's confidence and respect for the judicial system.

In reaching the appropriate sanction, the undersigned relies upon Rules 6.1 and 8.0 of the

ABA Standards.  In the absence of aggravating or mitigating factors, Rule 8.2 recommends

suspension "when a lawyer has been reprimanded for the same or similar misconduct and

engages in further similar acts of misconduct that cause injury or potential injury to a client, the

public, the legal system, or the profession."  (ABA Standards, Rule 8.2).  In 2005, the Louisiana

Supreme Court publicly reprimanded respondent for his misconduct before Judge Conery.  *In re*

*Moity*,  900 So.2d 836, 837 (La. 2005).  Moreover, the prior and current acts of misconduct

involve similar acts of misrepresentation that tend to damage the legal system and profession.

The ramifications for Mr. Moity's misrepresentations to the court are also contemplated

in Rule 6.1 of the ABA Standards.  Generally, suspension is recommended when the lawyer

knowingly makes false statements to the court and takes no remedial action; whereas a reprimand

is normally imposed when the lawyer acted negligently.  (Standards, Rules 6.12-6.13).  Here, Mr.

Moity's reckless disregard for the truth would place him somewhere between a reprimand and

suspension.  *Id*.  However, in instances of multiple misconduct, the ultimate sanction should be

consistent with the sanction for the most serious instance of misconduct[29] – in this case, Mr.

Moity's repeated acts of misrepresentation.  *See*, Rule 8.2, *supra*.  Furthermore, consideration of

applicable aggravating and mitigating factors compel a suspension.  (ABA Standards, Rules 9.2-

9.3).  For instance, respondent has prior disciplinary offenses, a dishonest or selfish motive, a

---

[29]  *See*, ABA Standards, Theoretical Framework.

pattern of misconduct, multiple offenses, refusal to acknowledge his wrongful conduct, and substantial experience in the practice of law.[30]  The sole mitigating factor arguably applicable  is the potential remoteness of Moity's prior offenses.  (Standards, Rule 9.3).  However, Mr. Moity's prior offenses occurred only three years before the current misconduct, and the Supreme Court formally reprimanded Moity only one and one-half years earlier.  *In re Moity*, *supra*.

The ABA Standards provide that a suspended lawyer "should not be permitted to return to practice until he has completed a reinstatement process demonstrating rehabilitation and fitness to practice law." (ABA Standards, Rule 2.3).  In that regard, it is recommended that the court require Mr. Moity, prior to seeking reinstatement, to establish that he has completed a minimum of three hours of professionalism classes, three hours of continuing education on the Federal Rules of Civil Procedure, and two hours of law office management.  In addition, it is recommended that the court require Mr. Moity successfully to complete a course in anger management, and to transmit written letters of apology to Judge Melançon, Magistrate Judge Methvin and Judge Methvin's former law clerk, Ms. Stacey Blanke.

In light of the recommended disposition of this matter, the undersigned deems it appropriate to assess respondent $ 97.50 for the cost of these proceedings.  The court incurred this sum to obtain certified transcripts of the two hearings in *Moity v. Moity, supra*.

For the reasons set forth above,

IT IS RECOMMENDED that the court suspend R. Michael Moity, Jr.'s right to practice law before the United States District Court for the Western District of Louisiana for a period of

---

[30]  Moity was admitted to the state bar in 1997, and thus by 2006, he had at least eight years of professional experience.

21

one year, and that prior to seeking reinstatement, he complete the minimum requirements set forth above in an effort to demonstrate rehabilitation and fitness to practice law.

IT IS FURTHER RECOMMENDED that R. Michael Moity, Jr. be assessed $ 97.50 in costs.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), R. Michael Moity, Jr. has **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A courtesy copy of any objection or response or request for extension of time shall be furnished to each active Article III judge of this court at the time of filing.  Timely objections will be considered by the district judges prior to final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 9th day of January 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE